IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:22-cv-00091-MR

| | |
|---|---|
| RODNEY LAMONT GREENFIELD, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>FNU HERNANDEZ, et al., )<br>)<br>Defendants. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on Defendants Joshua Rouse and Alex Troy Morrison's Motion for Summary Judgment [Doc. 30].

## I. BACKGROUND

The incarcerated Plaintiff Rodney Lamont Greenfield ("Greenfield" or simply, "the Plaintiff"), proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Alexander Correctional Institution.[1] [See Doc. 1: Complaint]. The Plaintiff's unverified Complaint passed initial review against Defendant Joshua Rouse[2] on claims of deliberate indifference to a serious medical need, failure to protect, and

---

[1] The Plaintiff is presently incarcerated at the Marion Correctional Institution.

[2] "John Doe (Unidentified) Correctional Sergeant" in the Complaint. [Doc. 1 at 4].

retaliation; and against Alex Morrison for violating due process in a prison disciplinary proceeding.[3] [Doc. 11: Order on Initial Review]. The Plaintiff seeks compensatory and punitive damages, a jury trial, and any other relief that the jury deems fit. [Doc. 1: Complaint at 8].

The Defendants filed the instant Motion for Summary Judgment. [Doc. 30: MSJ; see Doc. 31: MSJ Memo.]. Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 32: Roseboro Order]. The Plaintiff filed unverified[4] documents responding to the Defendants' Motion for Summary Judgment. [Doc. 34: "Evidence of Plaintiff"; Doc. 37: "Motion Filing Objection to Defendants Motion for Summary Judgment (DE-31)"]. The Defendants have

---

[3] These claims passed initial review against the Defendants in their individual capacities. The Plaintiff's claims against the Defendants in their official capacities were dismissed with prejudice on initial review. [Doc. 11: Order on Initial Review at 4]. Accordingly, the Court will not separately address the Defendants' summary judgment argument that the Plaintiff's official-capacity claims should be dismissed. [See Doc. 31 at 6-7].

[4] Neither of these documents is signed under penalty of perjury. 28 U.S.C. § 1746 (discussing verification). Although the "Evidence of Plaintiff" includes a notarial certificate, such is not the equivalent of a verification, and there is no indication that the notary administered an oath. See generally N.C. Gen. Stat. § 10B-40 (describing a notarial certificates); N.C. Gen. Stat. § 10B-43 (describing notarial certificates for an oath or affirmation); Network Computing Servs. Corp. v. Cisco Sys, Inc., 152 F. App'x 317, 321 (4th Cir. 2005) (a "notary's certificate simply means that the [documents'] signature[s are] authentic"). Accordingly, these documents will not be considered in the summary judgment analysis.

2

not replied, and the time to do so has expired. This matter is ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat

3

a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986)

4

> (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

## III. FACTUAL BACKGROUND

The following is a summary of the relevant portions of the undisputed forecast of evidence.[5]

On February 18, 2022, the Plaintiff was taken to an outside medical facility for an endovenous radiofrequency ablation procedure on his left leg for "leg swelling varicosities." [Doc. 40-1: MSJ Ex at 6, 9]. The imaging report notes that the Plaintiff's right leg would be treated at a later date. [Id. at 7]. On the date of the procedure, the Plaintiff's prison records indicate that his lower extremities had "minimal functional loss"; that he had a "minor restriction" of his activity grade; that his physical capacity and upper extremities were normal; and that he had no transportation restrictions. [Id.

---

[5] Because the Plaintiff's Complaint is not verified, it cannot be considered on summary judgment as a forecast of evidence.

at 12]. After the ablation procedure, he was instructed to "[a]void strenuous activities and … limit activities such as stair climbing and walking for 24 hours;" wear compression stockings for two weeks; and follow up with an ultrasound in one week. [Id. at 4, 7].

On February 19, 2022, the day after the ablation procedure, the Plaintiff engaged in two fights a few minutes apart with two different inmates. In the first incident, the Plaintiff tackled inmate Cory Stanfield onto the dayroom floor and struck him repeatedly. The two stopped fighting and, a few minutes later, Stanfield tossed the Plaintiff a weapon that Plaintiff immediately used to assault inmate Mario Madlock. Officers responded to a Code 4 call and broke up the fight with pepper spray. [See Doc. 31-4: MSJ Ex at 9 (Statement of Jennifer Aguillar)]. Officers recovered two weapons from the area of the second fight. [Doc. 31-4: MSJ Ex at 16 (Statement of Adam Herald)]. The Plaintiff was taken to an outside emergency room for treatment . [Doc. 31-4: MSJ Ex at 10, 14 (Statements of Alicia Alexander and John Edwards)].

The Plaintiff was charged with disciplinary infractions for both incidents. He refused to make a statement to an investigator, and he did not request staff assistance, evidence, or live witnesses at his disciplinary hearing. [Doc. 31-4: MSJ Ex at 26 (Disciplinary Investigation); Doc. 31-5:

6

MSJ Ex at 18-19 (Investigating Officer's Report); Doc. 31-4: MSJ Ex at 1-6 (Incident Report); Doc. 31-4: MSJ Ex at 7 (Refusal)]. The Plaintiff received disciplinary infractions for fighting related to the Stanfield incident and for fighting with a weapon or requiring outside medical attention related to the Madlock incident. [See Doc. 13-5: MSJ Ex at 11-12 (Disciplinary Report)].

The Defendants have submitted video files containing footage from a housing wing on February 19, 2022 that depicts the following [MSJ Ex A(4)]:

| | |
|---|---|
| 7:30:20 | An inmate stands outside the Plaintiff's cell door and appears to converse with the Plaintiff, who is inside. |
| 7:30:49 | The inmate enters the Plaintiff's cell. |
| 7:31:00 | The Plaintiff tackles the other inmate through the cell doorway, onto the dayroom floor, and strikes him repeatedly. |
| 7:31:15 | The Plaintiff steps back and the other inmate stands; the two converse. |
| 7:35:00 | The inmate tosses an object to the Plaintiff. |
| 7:35:06 | The Plaintiff turns, walks to the other end of the dayroom, and approaches a third inmate. |
| 7:35:24 | The Plaintiff pushes the third inmate through a doorway, out of the camera's view, and follows him through the doorway. |
| 7:35:30 | The Plaintiff and the third inmate reenter, fighting; the Plaintiff makes stabbing motions while holding an object in his hand. |

7

| | |
|---|---|
| 7:35:36 | The fight continues with the Plaintiff on the floor and the third inmate standing, striking him. |
| 7:35:44 | Staff begin to enter the housing wing. |
| 7:35:48 | The inmates are separated and restrained. |
| 7:37:40 | Staff recover an object from the floor in the area of the second fight. |
| 7:38:01 | Staff recover a second object from the floor. |

## IV. DISCUSSION

### A. Deliberate Indifference to a Serious Medical Need

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). An official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks but nevertheless disregards them. DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). The prison official "must both be aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks omitted).

The Plaintiff alleges that Defendant Rouse placed him in general population when the Plaintiff returned to the prison following "major surgery" for blood clots, even though he told Rouse that he needed a bottom tier cell due to his "physical conditions and lower extremities ailments." [Doc. 1: Complaint at 5] (errors uncorrected).

It is undisputed that the Plaintiff had a vein condition that required minor activity restrictions, and that he received an ablation procedure on February 18, after which he was advised to avoid strenuous activity and stair climbing for 24 hours. The Plaintiff has not forecast any evidence that he had a serious medical need either before or after the ablation procedure. Although the Plaintiff may have preferred a bottom tier cell, there is no forecast of evidence that the need for such was mandated by a doctor or would have been obvious to a layman. Nor has the Plaintiff forecast any evidence that Defendant Rouse knew that failing to provide him with a bottom

tier cell would place the Plaintiff at a substantial risk of harm. Accordingly, the Defendants will be granted summary judgment on the Plaintiff's claim for deliberate indifference to a serious medical need.

### B. Failure to Protect

"Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quotation marks omitted). The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986).

The Eighth Amendment's Cruel and Unusual Punishments Clause imposes on prison officials a duty to protect prisoners from violence at the hands of other prisoners and other prison officials. See Farmer, 511 U.S. at 833. Still, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. To state a claim against a prison official for failure to protect, an inmate must show: (1) "serious or significant physical or emotional injury," and (2) that prison officials exhibited deliberate indifference to inmate health or safety." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks omitted). To be deliberately indifferent,

a prison official must "know of and disregard and objectively serious … risk of harm." Id.

The Plaintiff alleges that Defendant Rouse knew of threats on the Plaintiff's life in a certain cell block; that Rouse transferred the Plaintiff to that block while knowing that Plaintiff's life was in danger; and that the Plaintiff was attacked the following morning. [Doc. 1: Complaint at 5-6]. The Plaintiff has not forecast any evidence whatsoever in support of his failure to protect claim. Moreover, the undisputed video evidence shows that in the two incidents at issue Plaintiff was the aggressor. Accordingly, the Defendants' Motion for Summary Judgment will be granted on the Plaintiff's claim for failure to protect.

### C. Retaliation

An inmate has a clearly established First Amendment right to be free from retaliation for filing lawsuits. See Booker v. S.C. Dep't of Corrs., 855 F.3d 533, 540 (4th Cir. 2017); Thompson v. Commonwealth of Va., 878 F.3d 89, 110 (4th Cir. 2017). Inmates also have a protected First Amendment right to complain to prison officials about prison conditions and improper treatment by prison employees that affect them. See Patton v. Kimble, 717 Fed. App'x 271, 272 (4th Cir. 2018).

To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct. Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (quotation marks and citation omitted). Retaliation claims brought by prisoners, however, are treated with skepticism because every act of discipline by a prison official is retaliatory in that it responds directly to prisoner misconduct. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). More, bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim. Id.

The Plaintiff alleges that Defendant Rouse moved him to a dangerous cell block in retaliation for having requested a bottom-tier cell, which made Rouse "mad." [Doc. 1: Complaint 1 at 5]. The Plaintiff has not forecast any evidence in support of his retaliation claim whatsoever. Accordingly, the Defendants' Motion for Summary Judgment will be granted on this claim.

### D. Disciplinary Due Process

Prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citing Morrissey

12

v. Brewer, 408 U.S. 471, 488 (1972)).  Where a prison disciplinary hearing may result in loss of good time credits or solitary confinement, however, an inmate is entitled to certain due process protections.  These include: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.  See Wolff, 418 U.S. at 564-71.  There is no constitutional right, however, to confront and cross-examine witnesses or to retain and be appointed counsel.  See Baxter v. Palmigiano, 425 U.S. 308, 322 (1976); Brown v. Braxton, 373 F.3d 501, 505-06 (4th Cir. 2004).  If the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied.  See Baxter, 425 U.S. at 323 n.5.  Moreover, substantive due process is satisfied if the disciplinary hearing decision was based on "some evidence."  Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985).

The Plaintiff alleges that Defendant Morrison, who investigated the disciplinary infractions at issue, failed to interview the Plaintiff or allow him to write a statement; failed to gather witness statements on Plaintiff's behalf, and placed the Plaintiff on punitive segregation for 180 days a result.  [Doc.

1: Complaint at 6-7]. The Plaintiff has not forecast any evidence in support of his disciplinary due process claim. The Defendants, however, have forecast evidence that the Plaintiff was granted due process during the disciplinary proceeding, but that he refused to make a statement, and did not request staff assistance, evidence, or witnesses. Accordingly, the Defendants' Motion for Summary Judgment will be granted on the Plaintiff's disciplinary due process claim.

## IV. CONCLUSION

For the reasons stated herein, the Court grants Defendants' Motion for Summary Judgment and this action is dismissed with prejudice.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 30] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Martin Reidinger
Chief United States District Judge